UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFF GRUVER,<br><br>                Plaintiff,<br><br>     v.<br><br>LESMAN FISHERIES INC., BOB LESMAN; and F/V SUNSET CHARGE, Official Number 534685, *in rem*,<br><br>                Defendants. | Case No.  C04-5428RJB<br><br>ORDER |

       This matter comes before the court on defendant's Motion and Memorandum for Summary Judgment Dismissing In Rem Claim (Dkt. 37), and on Plaintiff's Motion for an Order Declaring that Punitive Damages Against the Master of a Different Vessel are Theoretically Available as a Matter of Law for Intentional Assault (Dkt. 36).  The court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

       On June 22, 2004, plaintiff filed a complaint for damages pursuant to admiralty and maritime law, 28 U.S.C. § 1333 and 46 U.S.C. § 10601, and 45 U.S.C. § 56.  The complaint arises out of a an altercation involving plaintiff and Bob Lesman, owner of the F/V Sunset Charge, that allegedly resulted in injuries to plaintiff.  Plaintiff alleges claims for negligence, and for wages wilfully withheld while plaintiff worked as a seaman aboard the F/V Sunset Charge. Dkt. 1.  The complaint requests damages against Mr. Lesman personally, against Lesman Fisheries, Inc., and against F/V Sunset

Charge in rem. Id. On June 20, 2005, pursuant to the stipulation of the parties, the court dismissed all claims for wages. Dkt. 41.

The parties have stipulated that the claim related to the altercation between plaintiff and Mr. Lesman is asserted *in rem* under the general maritime law for negligence; and that the complaint does not assert any claims against any defendant for unseaworthiness or for negligence under the Jones Act, 46 U.S.C. § 688. Dkt. 38, Exh. 1, at 2-3.

Defendants have now filed a motion for summary judgment (Dkt. 37), and plaintiff has filed a motion requesting that the court find that punitive damages are theoretically available for intentional assault (Dkt. 36).

**1. Defendants' Motion for Summary Judgment Dismissing In Rem Claim**

**Motion.** On June 7, 2005, defendants filed a motion for summary judgment, requesting that the court dismiss the *in rem* claim in this action. Dkt. 37. Defendants contend that the *in rem* claim for negligence against the F/V Sunset Charge arises entirely out of an alleged assault by Mr. Lesman; at the time of the alleged assault, neither Mr. Lesman nor the corporate defendant had an employer/employee relationship to plaintiff; the alleged assault occurred on a vessel unrelated to Mr. Lesman and Lesman Fisheries, Inc.; and at the time of the alleged assault, plaintiff worked for the F/V Adventurous. Because they contend that the assault in this case is not attributable to the vessel, defendants request that the court dismiss the *in rem* claim.

In response to defendants' motion, plaintiff argues that the assault stemmed from a wage dispute, and that the record does not support Mr. Lesman's claim that he went aboard the F/V Adventurous to give plaintiff $100 check. Dkt. 42.

In reply, defendants contend that no offending conduct by the vessel gave rise to plaintiff's injuries because plaintiff was not employed by defendants at the time he was assaulted and he was not assaulted aboard the F/V Sunset Charge. Dkt. 47. Defendants further contend that plaintiff has not shown that, at the time of the alleged assault, Mr. Lesman was acting on behalf of or to further the interests of the F/V Sunset Charge. *Id.* Finally, defendants argue that plaintiff has not produced sufficient probative evidence to support his claim that the assault arose out of a wage dispute. *Id.*

**Summary Judgment Standard**.  Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**Relevant Facts.**  The parties have stipulated to the following facts:

1. During the month of May, plaintiff was employed by Lesman Fisheries, Inc. aboard the vessel SUNSET CHARGE.  During that time, his direct supervisor and captain of the SUNSET CHARGE was Bob Lesman.

2. In early June 2004, Jeff Gruver voluntarily discontinued his employment for Lesman Fisheries, inc. aboard the SUNSET CHARGE.  He so advised Bob Lesman.  At that time, Mr.

ORDER
Page - 3

Gruver took employment aboard the fishing vessel ADVENTUROUS.

3. The fishing vessel ADVENTUROUS is not owned or operated by Lesman Fisheries, Inc. Neither Bob Lesman nor Lesman Fisheries, Inc. has any legal or other connection to the fishing vessel ADVENTUROUS of any kind.

4. At the time Mr. Gruver left the employment of Lesman Fisheries, Inc., he was owed some amount of money in wages.

5. Plaintiff alleges that on June 18, 2004, Bob Lesman, as an individual, and on behalf of Lesman Fisheries, Inc., assaulted Mr. Gruver. Further, Mr. Gruver contends that the assault committed by Bob Lesman was committed on behalf of Lesman Fisheries, Inc. Mr. Gruver alleges that the assault committed by Bob Lesman was both negligent and intentional.

6. At the time of the assault alleged by Mr. Gruver, he was no longer employed by Lesman Fisheries, Inc. or aboard the fishing vessel SUNSET CHARGE.

7. At the time of the alleged assault on June 18, 2004, neither Mr. Lesman nor Mr. Gruver were aboard the fishing vessel SUNSET CHARGE.

8. At the time of the alleged assault on June 18, 2004, Bob Lesman and Jeff Gruver were not fellow crewmembers, crewmates, or otherwise affiliated by any business or other relationship.

Dkt. 38, Exh. 1, at 1-2.

Defendants contend that, when plaintiff quit his job with Mr. Lesman on June 5, 2004, Mr. Lesman paid him by check; that plaintiff later met Mr. Lesman on the dock, told Mr. Lesman that he owed him more money and wanted to be paid, and threatened him; that Mr. Lesman had not paid plaintiff because he had not been paid for the catch obtained while plaintiff was working for him; and that Mr. Lesman mailed a check for $203.44 to plaintiff on June 5, 2004. Dkt. 38, Exh. 2, at 2.

On June 11, 2004, plaintiff telephoned Mr. Lesman at his home and left the following message on the answering machine:

Yeah Lesman, this is Jeff Gruver. You want to try me, ok. I've been waiting all week for my check and it never showed up at my house. I'm not playing games, ok. My girls just got an eviction notice and I'm fucking pissed off at you. Ok, you want to try me, I'll get the Marshal to tie up your fucking boat. You don't want to fuck with me ok. You don't know me but nobody's not paid me in twenty-five years. I'm fucking crazy ok. You got a lot of nice shit. You want me to fuck your shit up? You best be giving me my money and don't give me that get on the dock fight shit because I will fight you and I will hurt you because I am not scared of you a bit. You best have my fucking paycheck. I am not fucking around any more. If you don't' give me my fucking paycheck before I leave this fucking town I'll fuck you over 24/7 buddy. I want my fucking check now. I will see you when you get into town.

See Dkt. 38, Exh. 4, at 2.

On June 12, 2004, the $203.44 check was delivered to plaintiff's Oregon address. *See* Dkt. 38, Exh. 4. Plaintiff left another voice mail on that date on Mr. Lesman's answering machine.

ORDER
Page - 4

> Yeah Lesman, I got your check. I'm playin at the Lucky Eagle here. I got that statement here and you told me that I was getting 10% off the top with no fuel off the top. You only paid me 9% and charged me $10 a day for living on the boat. You clipped me a hundred bucks here. I don't think you want to make an enemy for a few hundred bucks. It's not worth it. You don't know what I am capable of. So I think you best get me the rest of my money to me or we will part on fucking bad terms, alright. I will be looking forward to getting what you owe, alright. So pay up. Bye.

See Dkt. 38, Exh. 4, at 2.

The parties' versions of the events diverge from there. Plaintiff contends that he was lying on his bunk on the F/V Adventurous, about 1 a.m. on June 18, 2004, waiting for the skipper to arrive, when he saw Mr. Lesman and another man come on board the vessel. Plaintiff stated that both of the men charged up to his bunk; that he told the men to get off the boat; and that they trapped him in the bunk and assaulted him.

Mr. Lesman, on the other hand, stated that he went to the F/V Adventurous with a check in his hand to meet plaintiff's demand for more money, intending to tell plaintiff to stop leaving voice mail messages, to stop threatening him, and to leave him alone. Dkt. 38, Exh. 2, at 3. Mr. Lesman stated that "[w]hen I went aboard the ADVENTUROUS to give Mr. Gruver his check and tell him not to be in contact with me or my family in any way, he attacked me and I defended myself." *Id.*

In his deposition, Mr. Lesman testified as follows:

> A. Well, I went down to the ADVENTURESS a couple of time earlier that day, looking for Gruver, because I came in from fishing, and I had got a couple of nasty messages on my home answering machine. I guess you listened to those today.
> So anyway, I wasn't too happy about that, so I went down to find out what his big gripe was. And he flat-out attacked me when I jumped on the boat, you know. And we just went at it.

Dkt. 43, Exh. A., at 13.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

> Q. [By Mr. Merriam]  Now, tell me–you might have mentioned this, but explain further, if you will, tell me exactly what you had in mind when you went looking for Jeff Gruver.
>
> A. I just wondered why he was threatening me on my telephone. You know, he's telling me he's crazy. He's going to wreck my stuff.
> You know, I spend a lot of time with my grandson, and no way I would ever want to get jumped by him when I have my little grandson with me. And I wanted to go down there and straighten this matter out before I got jumped when I wasn't looking, especially with my five-year-old grandson.
>
> Q. So what did you think would happen when you went aboard the ADVENTURESS and confronted Jeff Gruver with this?

ORDER
Page - 5

> A. I really didn't know, but I wasn't very happy about those phone calls either, and I could tell he wasn't very happy either, you know. But I figured we could work something out.
> And he went bananas right away. I don't know if he was on meth or drunk or what he was, but he was not very good in his mind, I don't think. He's pretty wild.
>
> Q. So you went aboard the ADVENTURESS to talk to him?
>
> A. Yeah.

Dkt. 43, Exh. A, at 16-17.

**Discussion**. In this motion for summary judgment, the court has construed facts in plaintiff's favor. For purposes of the motion for summary judgment only, the relevant facts are as follows: previous to the alleged assault, plaintiff had been employed to work on the F/V Sunset Charge; plaintiff's employment with the F/V Sunset Charge had terminated by the time of the alleged assault; Mr. Lesman owed plaintiff wages for his work on the F/V Sunset Charge; before the day of the alleged assault, plaintiff had confronted Mr. Lesman personally about the amount of the wages that he had been paid; plaintiff left two voice mail messages on Mr. Lesman's phone, that could, taken in the best light for plaintiff, be described as confrontational; plaintiff was not on the F/V Sunset Charge at the time of the alleged assault, but was on board the vessel with which he was engaged at the time; Mr. Lesman went to the vessel with his nephew; and Mr. Lesman assaulted plaintiff.

Under Rule C of the Supplemental Admiralty Rules, a party may only proceed *in rem* under two circumstances: (1) pursuant to federal statute, or (2) by establishing the existence of a maritime lien. 28 U.S.C. § 723; *see also Trueman v. The Historic Steamtug New York*, 120 F.Supp.2d 228, 230 (N.D.N.Y. 2000). Since no federal statute is at issue in this case, plaintiff's *in rem* claim against the F/V Sunset Charge can only be maintained if he can establish the existence of a maritime lien.

"A maritime lien is a privileged claim upon maritime property, such as a vessel, arising out of services rendered to or injuries caused by that property....The theoretical basis of the maritime lien goes to the heart of all that is distinctive about admiralty law: it is a right based upon the legal fiction that the ship is the wrongdoer--the ship itself caused the loss and can be called to the bar to make good the loss." Schoenbaum, Admiralty and Maritime Law, § 9-1 (4th ed. 2004). The ship, as an entity considered apart from the personal liability of the owner, becomes responsible for benefits conferred and damages committed by the ship. *Todd Shipyards Cor. v. City of Athens,* 83 F.Supp. 67, 75 (D.C. Md. 1949).

As maritime law developed, courts permitted actions *in rem* against a vessel to enforce maritime liens for nearly all maritime torts, including personal injury, with the exception that no action *in rem* could be brought for negligence when a seaman's injuries resulted from an assault. *See The ANCES*, 93 F.240 (4th Cir. 1899); *Trueman v. The Historic Steamtug New York*, 120 F.Supp. 2d 228, 230 (N.D.N.Y. 2000); *Stewart v. Steamer Blue Trader*, 428 F.2d 361, 363 (1st Cir. 1970).

Exceptions to the rule, however, permitted *in rem* actions based upon assault to proceed under various theories of maritime law. For example, in *The Rolph*, 293 Fed. 269, *aff'd* 299 F.3d 52 (9th Cir. 1923), a seaman was permitted to sue *in rem* when he was beaten by a fellow crewmember so viciously as to render the vessel unseaworthy. In *The David Evans*, 187 F. 775 (D.Hawaii 1911), a seaman was permitted to sue *in rem* when he was beaten by the vessel master, on the theory that the beating was a breach of the obligation under the shipping articles to treat the seaman with proper kindness. In *The Marion Chilcott*, 95 F. 688, 689 (D.Wash. 1899), an *in rem* action was allowed where the plaintiff was repeatedly assaulted by a subordinate officer. All of these actions appear to have been based upon the special duty of the master to protect seamen related to their employment on the vessel.

However, in *Stewart v. Steamer Blue Trader*, 428 F.2d 361, 363 (1st Cir. 1970), an *in rem* action was not permitted to proceed when the person injured in an assault on board a vessel was not a seaman on that vessel. In *Stewart*, the First Circuit declined to allow a tavern patron to maintain an *in rem* action based upon a claim for negligence, when the alleged assault was committed on board the vessel by an inebriated seaman who was in the employ of the vessel, after the seaman had invited the tavern patron to the vessel.

In this case, plaintiff claims that he was a seaman and was owed wages from his employment on the F/V Sunset Charge; these facts point to some connection between plaintiff, his employment on the vessel, and the wages owed to him. Defendants argue that, because plaintiff was no longer in the employ of the vessel and because the alleged assault did not occur on board the F/V Sunset Charge, plaintiff cannot maintain an action *in rem* against the vessel. Defendants further maintain that the alleged assault did not arise out of a wage dispute, but instead was the result of Mr. Lesman responding to plaintiff's threatening behavior, in person and by phone message.

In the context of maritime law, seamen have long been considered to be wards of the court, and great deference has been afforded to them in protecting and liberally construing their rights. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 91-92 n. 9 (1946); *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971). Nonetheless, the cases indicate that, in order for a plaintiff to enforce a maritime lien against the vessel based upon an assault, there must be some nexus between the alleged assault, the parties involved in the alleged assault, and the ship, sufficient for the ship to be considered to have caused the loss.

The court has carefully reviewed the record. Because so many disputed issues of material fact are unresolved, the court cannot rule as a matter of law whether the plaintiff is entitled to pursue an action *in rem* against the vessel. Courts have not established a bright line rule, as defendants suggest, that requires an alleged assault to be on board the vessel at the time of the alleged assault, nor has a line been drawn that requires that a former seaman owed wages may not sue *in rem*. Further, the court cannot at this point determine what the parties' motivations and intentions were when the alleged assault occurred. In order for the court to determine whether there is a sufficient nexus between the alleged assault, the parties involved, and the ship to hold the ship liable *in rem*, the disputed facts, which are largely issues of credibility, will need to be determined.

Accordingly, defendants' motion for summary judgment dismissing the in rem claim should be denied, but defendants are not precluded from raising the issue at an appropriate time.

**2. Plaintiff's Motion for an Order Declaring that Punitive Damages Against the Master of a Different Vessel are Theoretically Available as a Matter of Law for Intentional Assault**

**Motion**. Plaintiff brought this action under 42 U.S.C. § 1333, 46 U.S.C. § 10602 and the general maritime law. Dkt. 28, at 1. The claim for wages under 46 U.S.C. § 10602 has been dismissed. In the amended complaint, plaintiff seeks punitive damages in addition to general damages. *Id.* at 4.

On June 7, 2005, plaintiff filed a motion, requesting that, in the event the *in rem* claims based upon assault are dismissed, the court determine that plaintiff may assert a punitive damages claim

against Mr. Lesman based upon the assault.  Plaintiff alleges that, if the court determines that there is not an employment relationship between plaintiff and Mr. Lesman to establish an *in rem* claim, punitive damages should be available to him.

Defendants contend that punitive damages are not available in this maritime action, whether an employment relationship existed at the time of the alleged assault or not.

In his reply, plaintiff argues that, if the *in rem* claim if dismissed by the court, he can no longer be considered a seaman in the employ of Mr. Lesman, and therefore he is no different from any other individual who is intentionally assaulted aboard a vessel.  Dkt. 46.

**Discussion.**

The Jones Act precludes a seaman from recovering punitive damages. 46 U.S.C.A. § 688; *Kopczynski v. The Jacqueline*, 742 F.2d 555, 560-61 (9th Cir. 1984).  Under the Supreme Court's decision in *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), a seaman is precluded from using a maritime law claim to recover damages that would be unavailable under the Jones Act.  In *Miles v. Apex Marine Corp.*, the Supreme Court concluded that a decedent's mother could not recover damages for loss of society under the Jones Act and the Death on the High Seas Act.

> The Jones Act also precludes recovery for loss of society in this case involving a general maritime claim for wrongful death resulting from unseaworthiness, since it would be inconsistent with this Court's place in the constitutional scheme to sanction more expansive remedies for the judicially created unseaworthiness cause of action, in which liability is without fault, than Congress has allowed in cases of death resulting from negligence. This holding restores a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law.

*Miles v. Apex Marine Corp.*, 498 U.S. at 20.

Further, in *Scarborough v. Clemco*, 391 F.3d 660, 668 (5th Cir. 2004), the Fifth Circuit determined that *Miles v. Apex Marine Corp., supra*, precludes seamen from obtaining punitive damages against a third party defendant who is not the seaman's employer. *Id.*

Accordingly, punitive damages are unavailable to seamen for claims under the Jones Act. To the extent that plaintiff can be considered a seaman, in the interest of uniform application of maritime law, punitive damages are unavailable in a case such as this, where the claims based on assault are brought pursuant to general maritime law.

Plaintiff argues, however, that, if the court dismisses the *in rem* claim against the F/V Sunset

Charge, he should be permitted to pursue punitive damages. Plaintiff's theory is that he would not be a seaman because no employment relationship existed between him and Mr. Lesman at the time of the alleged assault, and he should be permitted to sue for punitive damages as would any other third party. Some courts have held that punitive damages are available to passengers aboard vessels. *In re Horizon Cruises*, 101 F.Supp.2d 204 (S.D.N.Y. 2000), the district court distinguished *Miles* and concluded that punitive damages were available for non seaman passengers on a cruise line. *See Horizon Cruises*, 101 F.Supp. 2d at 210, *citing* David W. Robertson, Punitive Damages in American Maritime Law, 28 J. Mar. L. & Com. 73, 90 n. 79 (1997) ("From very early times the common law had held that the carrier-passenger relationship entailed special solicitude for passengers and required the highest degree of care from carriers.").

At this point, a determination whether plaintiff could be characterized as a seaman or in some other status depends on development of the facts involving the nexus between the assault, the parties, and each of the two vessels. A decision on whether plaintiff can state a claim for punitive damages is premature. Plaintiff's motion for an order declaring that punitive damages are available against Mr. Lesman should be denied without prejudice to raise the issue at an appropriate time during the trial.

**The court questions whether maritime law applies to this case and, if not, whether this court has jurisdiction. The parties should be prepared to discuss this issue at the pretrial conference.**

Therefore, it is hereby

**ORDERED** that defendant's Motion and Memorandum for Summary Judgment Dismissing In Rem Claim (Dkt. 37) is **DENIED WITHOUT PREJUDICE.** Plaintiff's Motion for an Order Declaring that Punitive Damages Against the Master of a Different Vessel are Theoretically Available as a Matter of Law for Intentional Assault (Dkt. 36) is **DENIED WITHOUT PREJUDICE**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 5th day of July, 2005.

/s/ Robert J. Bryan
ROBERT J. BRYAN
U.S. DISTRICT JUDGE