UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFF GRUVER,<br><br>                Plaintiff,<br><br>      v.<br><br>LESMAN FISHERIES INC., BOB LESMAN; and F/V SUNSET CHARGE, Official Number 534685, *in rem*,<br><br>                Defendants. | Case No. C04-5428RJB<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

      This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. Dkt. 51. The court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

PROCEDURAL HISTORY

      On June 22, 2004, plaintiff filed a complaint for damages pursuant to admiralty and maritime law, 28 U.S.C. § 1333 and 46 U.S.C. § 10601, and 45 U.S.C. § 56. The complaint arises out of a an altercation involving plaintiff and Bob Lesman, owner of the F/V Sunset Charge, that allegedly resulted in injuries to plaintiff. Plaintiff alleges claims for negligence, and for wages wilfully withheld while plaintiff worked as a seaman aboard the F/V Sunset Charge. Dkt. 1. The complaint requests damages against Mr. Lesman personally, against Lesman Fisheries, Inc., and against F/V Sunset Charge in rem. Id. On June 20, 2005, pursuant to the stipulation of the parties, the court dismissed all claims for wages. Dkt. 41.

      The parties have stipulated that the claim related to the altercation between plaintiff and Mr. Lesman is asserted *in rem* under the general maritime law for negligence; and that the complaint does not

assert any claims against any defendant for unseaworthiness or for negligence under the Jones Act, 46 U.S.C. § 688. Dkt. 38, Exh. 1, at 2-3.

On July 5, 2005, the court issued an order denying without prejudice defendants' motion for summary judgment on the in rem claim. Dkt. 48. In that order, the court questioned whether maritime law applies to this case and, if not, whether this court has jurisdiction. Defendants have now filed a motion, requesting that the court dismiss the action for lack of subject matter jurisdiction, arguing that there is no basis for admiralty jurisdiction over the remaining claims in this case. Dkt. 51.

## RELEVANT FACTS

The parties have stipulated to the following facts:

1. During the month of May, plaintiff was employed by Lesman Fisheries, Inc. aboard the vessel SUNSET CHARGE. During that time, his direct supervisor and captain of the SUNSET CHARGE was Bob Lesman.

2. In early June 2004, Jeff Gruver voluntarily discontinued his employment for Lesman Fisheries, inc. aboard the SUNSET CHARGE. He so advised Bob Lesman. At that time, Mr. Gruver took employment aboard the fishing vessel ADVENTUROUS.

3. The fishing vessel ADVENTUROUS is not owned or operated by Lesman Fisheries, Inc. Neither Bob Lesman nor Lesman Fisheries, Inc. has any legal or other connection to the fishing vessel ADVENTUROUS of any kind.

4. At the time Mr. Gruver left the employment of Lesman Fisheries, Inc., he was owed some amount of money in wages.

5. Plaintiff alleges that on June 18, 2004, Bob Lesman, as an individual, and on behalf of Lesman Fisheries, Inc., assaulted Mr. Gruver. Further, Mr. Gruver contends that the assault committed by Bob Lesman was committed on behalf of Lesman Fisheries, Inc. Mr. Gruver alleges that the assault committed by Bob Lesman was both negligent and intentional.

6. At the time of the assault alleged by Mr. Gruver, he was no longer employed by Lesman Fisheries, Inc. or aboard the fishing vessel SUNSET CHARGE.

7. At the time of the alleged assault on June 18, 2004, neither Mr. Lesman nor Mr. Gruver were aboard the fishing vessel SUNSET CHARGE.

8. At the time of the alleged assault on June 18, 2004, Bob Lesman and Jeff Gruver were not fellow crewmembers, crewmates, or otherwise affiliated by any business or other relationship.

Dkt. 38, Exh. 1, at 1-2.

Defendants contend that, when plaintiff quit his job with Mr. Lesman on June 5, 2004, Mr. Lesman paid him by check; that plaintiff later met Mr. Lesman on the dock, told Mr. Lesman that he owed him more money and wanted to be paid, and threatened him; that Mr. Lesman had not paid plaintiff because he

Page - 2

had not been paid for the catch obtained while plaintiff was working for him; and that Mr. Lesman mailed a check for $203.44 to plaintiff on June 5, 2004. Dkt. 38, Exh. 2, at 2.

On June 11, 2004, plaintiff telephoned Mr. Lesman at his home and left the following message on the answering machine:

> Yeah Lesman, this is Jeff Gruver. You want to try me, ok. I've been waiting all week for my check and it never showed up at my house. I'm not playing games, ok. My girls just got an eviction notice and I'm fucking pissed off at you. Ok, you want to try me, I'll get the Marshal to tie up your fucking boat. You don't want to fuck with me ok. You don't know me but nobody's not paid me in twenty-five years. I'm fucking crazy ok. You got a lot of nice shit. You want me to fuck your shit up? You best be giving me my money and don't give me that get on the dock fight shit because I will fight you and I will hurt you because I am not scared of you a bit. You best have my fucking paycheck. I am not fucking around any more. If you don't' give me my fucking paycheck before I leave this fucking town I'll fuck you over 24/7 buddy. I want my fucking check now. I will see you when you get into town.

See Dkt. 38, Exh. 4, at 2.

On June 12, 2004, the $203.44 check was delivered to plaintiff's Oregon address. *See* Dkt. 38, Exh. 4. Plaintiff left another voice mail on that date on Mr. Lesman's answering machine.

> Yeah Lesman, I got your check. I'm playin at the Lucky Eagle here. I got that statement here and you told me that I was getting 10% off the top with no fuel off the top. You only paid me 9% and charged me $10 a day for living on the boat. You clipped me a hundred bucks here. I don't think you want to make an enemy for a few hundred bucks. It's not worth it. You don't know what I am capable of. So I think you best get me the rest of my money to me or we will part on fucking bad terms, alright. I will be looking forward to getting what you owe, alright. So pay up. Bye.

See Dkt. 38, Exh. 4, at 2.

The parties' versions of the events diverge from there. Plaintiff contends that he was lying on his bunk on the F/V Adventurous, about 1 a.m. on June 18, 2004, waiting for the skipper to arrive, when he saw Mr. Lesman and another man come on board the vessel. Plaintiff stated that both of the men charged up to his bunk; that he told the men to get off the boat; and that they trapped him in the bunk and assaulted him.

Mr. Lesman, on the other hand, stated that he went to the F/V Adventurous with a check in his hand to meet plaintiff's demand for more money, intending to tell plaintiff to stop leaving voice mail messages, to stop threatening him, and to leave him alone. Dkt. 38, Exh. 2, at 3. Mr. Lesman stated that "[w]hen I went aboard the ADVENTUROUS to give Mr. Gruver his check and tell him not to be in contact with me or my family in any way, he attacked me and I defended myself." *Id.*

ORDER
Page - 3

In his deposition, Mr. Lesman testified as follows:

> A. Well, I went down to the ADVENTURESS a couple of times earlier that day, looking for Gruver, because I came in from fishing, and I had got a couple of nasty messages on my home answering machine. I guess you listened to those today.
> So anyway, I wasn't too happy about that, so I went down to find out what his big gripe was. And he flat-out attacked me when I jumped on the boat, you know. And we just went at it.

Dkt. 43, Exh. A., at 13.

* * * * * * * * * * * * * * * *

> Q. [By Mr. Merriam]   Now, tell me–you might have mentioned this, but explain further, if you will, tell me exactly what you had in mind when you went looking for Jeff Gruver.
>
> A. I just wondered why he was threatening me on my telephone. You know, he's telling me he's crazy. He's going to wreck my stuff.
> You know, I spend a lot of time with my grandson, and no way I would ever want to get jumped by him when I have my little grandson with me. And I wanted to go down there and straighten this matter out before I got jumped when I wasn't looking, especially with my five-year-old grandson.
>
> Q. So what did you think would happen when you went aboard the ADVENTURESS and confronted Jeff Gruver with this?
>
> A. I really didn't know, but I wasn't very happy about those phone calls either, and I could tell he wasn't very happy either, you know. But I figured we could work something out.
> And he went bananas right away. I don't know if he was on meth or drunk or what he was, but he was not very good in his mind, I don't think. He's pretty wild.
>
> Q. So you went aboard the ADVENTURESS to talk to him?
>
> A. Yeah.

Dkt. 43, Exh. A, at 16-17.

## LEGAL STANDARD

A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); see 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant). When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*,

850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

## DISCUSSION

The Constitution provides that "[t]he judicial Power shall extend ... to all Cases of admiralty and maritime Jurisdiction." U.S. Const. Art. III, § 2. Congress has granted federal district courts original, exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction" in 28 U.S.C. § 1333(1).

Traditionally, the test for admiralty jurisdiction was based strictly on locality, with all torts occurring on navigable waters being cognizable in admiralty. *Hough v. Western Transp. Co. (The Plymouth)*, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865); Thomas J. Schoenbaum, Admiralty and Maritime Law, § 3-5 (4th ed. 2004). However, the Supreme Court has since refined the test to include additional elements, and the mere fact that a tort occurred on navigable waters is no longer sufficient. *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 267-68 (1972)(finding serious difficulties with pure locality test and finding no admiralty jurisdiction where plane crashed into navigable waters because wrong did not bear significant relationship to traditional maritime activity). Under current Supreme Court case law, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 364 (1990); *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

The location test requires that the tort occur on navigable waters or that the injury suffered on land was caused by a vessel in navigable waters. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. at 534. The connection test requires that the incident (1) have a potentially disruptive impact on maritime commerce; and (2) that the general character of the activity giving rise to the incident have a substantial relationship to traditional maritime activity. *Sisson v. Ruby*, 597 U.S. at 364, *Jerome B. Grubart, Inc. v. Lakes Dredge & Dock Co.*, 513 U.S. at 538-40.

Defendants concede, for purposes of this motion, that the location test is satisfied because the tort occurred aboard a fishing vessel on navigable waters. Defendants also concede, for purposes of this motion, that the first prong of the connection test is met because the general character of the incident was an assault, allegedly stemming from a wage dispute between a former crewmember and his former employer.

At issue then, is the second prong of the connection test: whether the general character of the activity giving rise to the incident had a substantial relationship to maritime activity.

The first step in this analysis is to define the relevant activity. *Sisson v. Ruby*, 597 U.S. at 364. This is to be done in terms of the general conduct from which the incident arose, rather than the particular circumstances of the incident in question. *Id.*

In determining whether the activity in question bears a substantial relationship to traditional maritime activity, the test is set forth in *Executive Jet Aviation, Inc. v. City of Cleveland, supra*. This involves determining whether the activity is so closely related to matters traditionally subject to admiralty law that reasons for applying that body of law and its procedures should apply. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. at 269-70; Schoenbaum, *supra*, § 3-5. The *Sisson* court emphasized that the basis for admiralty jurisdiction is the necessity of uniform rules for the business of shipping and those engaged in maritime commerce. In *Grubart*, the court framed the inquiry as whether the tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. at 539-40. In addition, the *Grubart* court held that the activity in question must at least arguably be a proximate cause of the incident. *Id.* at 541.

In this case, the general activity giving rise to the incident can be characterized as either Mr. Lesman's failure to pay plaintiff the wages he was due, or the assault itself.

With regard to the failure to pay wages due, this activity does not bear a substantial relationship to traditional maritime activity. Employers pay wages to employees in all industries, not just the fishing industry. Wage disputes can be resolved in state courts, under state law. In this case, plaintiff himself has invoked these state laws to seek additional penalties for his wage claims beyond those provided by federal

maritime law. Because state law can and does resolve wage disputes arising between employers and employees, including seamen, there is no particular need to invoke the traditional principles of admiralty law that have been developed to govern unique activities involving the navigation of vessels on navigable waters. In fact, Washington law provides remedies beyond federal law, and plaintiff pursued those remedies in this case. In any event, wage claims are no longer an issue in this case.

If the general activity in this case is the alleged assault itself, this activity does not bear a substantial relationship to maritime law. Fighting is not unique to the maritime environment; it occurs between individuals who have nothing to do with fishing vessels. Fighting can occur in any number of places. In this case happened on a vessel, which happened to be plaintiff's residence at the time. The alleged assault could have occurred in any number of places–on a dock, on a street, or in a house or apartment where plaintiff was living. Such a fortuitous connection to navigable waters does not constitute the type of significant connection to traditional maritime activity that is required for admiralty jurisdiction. *See Corrigan v. Harvey*, 951 F.Supp. 948, 952 (D.Hawaii 1996)(finding that plaintiff seaman failed to establish significant connection to traditional maritime activity for assault claim stemming from fight with crewmember from another vessel, noting that there was nothing to distinguish the incident from an ordinary fight in the street). State law provides a remedy for an assault; there is no need for application of the specialized body of admiralty law.

While the alleged assault in this case happened to occur on a vessel on navigable water, neither the vessel nor the presence of navigable waters had anything to do with the incident. There is nothing uniquely maritime about the alleged assault, and nothing about plaintiff's claim would be different if the alleged assault had occurred on land or between two individuals wholly unconnected with maritime activities. Plaintiff was not employed by defendants as a seaman at the time of the incident. Plaintiff has failed to satisfy the second prong of the connection test to establish admiralty jurisdiction: the general character of the activity giving rise to the incident did not have a substantial relationship to maritime activity. The normal concerns of admiralty law are not implicated and there is no reason to apply the uniform body of federal law to the claims in this case. The court does not have subject matter jurisdiction over the assault claims in this case. The court should dismiss the case without prejudice for lack of subject matter jurisdiction.

On August 23, 2005, plaintiff filed a Motion for Sanctions Against Defense Counsel for Obtaining a Continuance and Scheduling Mediation by Deceit. Dkt. 56. Because the court does not have jurisdiction over this case, this motion should be stricken. Plaintiff is not precluded from raising the issue in state court, should he choose to proceed in that forum.

Therefore, it is hereby **ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 51) is **GRANTED**. The remaining claims in this case are **DISMISSED WITHOUT PREJUDICE** to bring those claims in state court. Plaintiff's Motion for Sanctions Against Defense Counsel for Obtaining a Continuance and Scheduling Mediation by Deceit (Dkt. 56) is **STRICKEN**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 29th day of August, 2005.

*Robert J. Bryan*
Robert J. Bryan
United States District Judge